UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

STANLEY KAROL,

                        Plaintiff,

        -against-                                          18 CV 6467 (JGK)

CITY OF NEW YORK, KENNETH K.
WONG, Badge No. 8, EDUARDO CAUTELA,
Badge No. 2903, ROBERT P.  CANONICA,
Badge No. 195, and MICHAEL J.  GILLEN,
Badge No. 905,

                        Defendants.


**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS**


Emery Celli Brinckerhoff & Abady LLP
600 Fifth Avenue, 10th Floor
New York, New York 10020
(212) 763-500

**TABLE OF CONTENTS**

**PAGE NO.**

TABLE OF AUTHORITIES ..................................................................................iii-vi

PRELIMINARY STATEMENT ..................................................................................1

FACTUAL BACKGROUND ........................................................................................3

ARGUMENT ................................................................................................................5

I.      DEFENDANTS' EXTRA-RECORD SUBMISSIONS ARE IMPROPER ON
       A MOTION TO DISMISS.................................................................................6

II.     INDIVIDUAL DEFENDANTS VIOLATED PLAINTIFF'S FIRST
      AMENDMENT RIGHTS BY RETALIATING AGAINST HIM FOR
      POLITICAL SPEECH ........................................................................................8

           A.     The Temporal Proximity of Plaintiff's Protected Activity and the
                  Individual Defendants' Investigation is Highly Suggestive of
                  Causation.................................................................................................9

           B.     Plaintiff Has Been Actually Chilled, and Has Suffered a Concrete
                  Harm Through the Issuance of Tickets Requiring His Appearance in
                  Court ....................................................................................................12

                    1.     Mr. Karol's Protected Conduct Has Been Actually Chilled..........12

                    2.     The Inspection and Resulting Tickets Requiring Plaintiff's
                              Appearance Before an Administrative Tribunal Is an
                              Independent Concrete Harm .........................................................13

           C.     Because the Inspection Itself Was Retaliatory, All Four Individual
                    Defendants Were Personally Involved in Violating Plaintiff's Rights......14

III.    THE CITY'S APPLICATION OF SHORT-TERM RENTAL
      PROSCRIPTIONS TO PLAINTIFF'S TWO-FAMILY HOME VIOLATES
      SUBSTANTIVE DUE PROCESS.....................................................................15

           A.     The City Has Infringed Upon Plaintiff's Fundamental Right to Use
                  His Property in a Way Tainted With Impermissible Animus...................16

                      1.     Plaintiff Has a Property Interest in the Lawful Use of His
                                Property..........................................................................................16

                      2.     The City's Decision to Begin Targeting One- and Two-Family
                                Homeowners Was Tainted With Impermissible Animus ..............19

B.    The City's Newfound Policy of Targeting One- and Two-Family
      Homeowners Lacks Minimum Rationality ................................................20

IV.   QUALIFIED IMMUNITY IS UNAVAILABLE FOR RETALIATORY
      INVESTIGATIONS ..........................................................................................21

CONCLUSION..........................................................................................................................22

# TABLE OF AUTHORITIES

**PAGE NO.**

## Cases

*49 WB, LLC v. Village of Haverstraw,*
  No. 08 CV 5784, 2012 WL 336152 (S.D.N.Y. Feb. 2, 2012) ......................................... 19

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) ....................................................................................................... 5

*Askins v. Doe No. 1,*
  727 F.3d 248 (2d Cir. 2013) ......................................................................................... 22

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544, 570 (2007) ............................................................................................... 5

*Case v. City of New York,*
  233 F. Supp. 3d 372 (S.D.N.Y. 2017) ........................................................................... 22

*Cine SK8, Inc. v. Town of Henrietta,*
  507 F.3d 778 (2d Cir. 2007) .................................................................................. 15, 19

*City of Cleburne v. Cleburne Living Ctr.,*
  473 U.S. 432 (1985) ................................................................................................. 19, 20

*City of New York v. 330 Cont'l LLC,*
  60 A.D.3d 226 (1st Dep't 2009) ..................................................................................... 4

*City of New York v. 330 Continental LLC,*
  60 A.D.3d 226 (1st Dep't 2009) ................................................................................... 17

*Clinton Rising v. N.Y.C. Envtl. Control Bd.,*
  Index No. 506983/17, 2018 N.Y. Misc. LEXIS 2102
  (Sup. Ct. Kings Co. May 11, 2018) ............................................................................... 17

*Curley v. Vill. of Suffern,*
  268 F.3d 65 (2d Cir. 2001) ........................................................................................... 12

*DePace v. Flaherty,*
  183 F. Supp. 2d 633 (S.D.N.Y. 2002) ............................................................................ 9

*Dingwell v. Cossette,*
  No. 3:17-CV-01531, 2018 WL 2926287 (D. Conn. June 7, 2018) ................................ 13

*DiPetto v. U.S. Postal Serv.,*
  383 F. App'x 102 (2d Cir. 2010) ................................................................................... 11

iii

*Dorsett v. Cty. of Nassau*,
732 F.3d 157 (2d Cir. 2013)..................................................................8

*Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*,
282 F.3d 83 (2d Cir. 2002)..................................................................13

*Edrei v. City of New York*,
254 F. Supp. 3d 565 (S.D.N.Y. 2017)..................................................21

*El Badrawi v. U.S.*,
787 F. Supp. 2d 204 (D. Conn. 2011)..................................................20

*Espinal v. Goord*,
558 F.3d 119 (2d Cir. 2009)..................................................................9

*Gagliardi v. Vill. of Pawling*,
18 F.3d 188 (2d Cir. 1994)..................................................................13

*Galley Schuler v. Rainforest Alliance, Inc.*,
No. 2:14-CV-226, 2016 WL 10516026 (D. Vt. Feb. 10, 2016)..............7

*Gavlak v. Town of Somers*,
267 F. Supp. 2d 214 (D. Conn. 2003)............................................17, 18

*Goodspeed Airport, LLC v. East Haddam Land Tr., Inc.*,
No. CIVA3:01CV403, 2005 WL 1403822 (D. Conn. June 13, 2005)...........16

*Hope v. Pelzer*,
536 U.S. 730 (2002)............................................................................21

*Iqbal v. Hasty*,
490 F.3d 143 (2d Cir. 2007)................................................................21

*Jeune v. Crew*,
Nos. 16 CV 1107, 16 CV 1108, 16 CV 2437, 2017 WL 4357382
(E.D.N.Y. Sept. 29, 2017)...................................................................11

*Jones v. Bay Shore Union Free Sch. Dist.*,
947 F. Supp. 2d 270 (E.D.N.Y. 2013)..................................................12

*Jones v. Parmley*,
465 F.3d 46 (2d Cir. 2006)..................................................................22

*Littlejohn v. City of New York*,
795 F.3d 297, 314 (2d Cir. 2015)........................................................15

*Lopez v. Jet Blue Airways*,
662 F.3d 593 (2d Cir. 2011)..................................................................6

iv

*Mayo v. Fed. Gov't,*
    558 F. App'x 55 (2d Cir. 2014) ......................................................... 6

*McKenna v. Wright,*
    386 F.3d 432 (2d Cir. 2004) ............................................................ 21

*Miracle Mile Assocs. v. City of Rochester,*
    617 F.2d 18 (2d Cir. 1980) .............................................................. 22

*Molinari v. Bloomberg,*
    564 F.3d 587 (2d Cir. 2009) ............................................................ 15

*Nakahata v. N.Y.-Presbyterian Healthcare Sys., Inc.,*
    723 F.3d 192 (2d Cir. 2013) .............................................................. 5

*Nnebe v. Daus,*
    184 F. Supp. 3d 54 (S.D.N.Y. 2016) ................................................ 15

*Phillip v. Univ. of Rochester,*
    316 F.3d 291 (2d Cir. 2003) ............................................................ 16

*Pirnik v. Fiat Chrysler Auto. N.V.,*
    No. 15 CV 7199, 2017 WL 3278928 (S.D.N.Y. Aug. 1, 2017) ......... 7

*Plyler v. Doe,*
    457 U.S. 202 (1982) ........................................................................ 20

*Posr v. Court Officer Shield No. 207,*
    180 F.3d 409 (2d Cir. 1999) .............................................................. 9

*Roth v. Jennings,*
    489 F.3d 499 (2d Cir. 2007) ........................................................... 6, 7

*Saleh v. City of New York,*
    No. 06 Civ. 1007, 2007 WL 4437167 (S.D.N.Y. Dec. 17, 2007) ..... 11

*Smith v. Campbell,*
    782 F.3d 93 (2d Cir. 2015) .............................................................. 14

*Smith v. Cty. of Suffolk,*
    776 F.3d 114 (2d Cir. 2015) ........................................................ 11, 22

*Stajic v. City of New York,*
    214 F. Supp. 3d 230 (S.D.N.Y. 2016) ................................................ 9

*Tabbaa v. Chertoff,*
    509 F.3d 89 (2d Cir. 2007) .............................................................. 13

*U.S. Football League v. Nat'l Football League*,
   No. 84 Civ. 7484, 1986 WL 5623 (S.D.N.Y. May 15, 1986)..........................................22

*U.S. Dep't of Agriculture v. Moreno*,
   413 U.S. 528 (1973)..................................................................................................19

*Weaver v. Amato*,
   No. 9:12-CV-684, 2013 WL 5355065 (N.D.N.Y. Sept. 24, 2013)...................................21

*Winston v. City of Syracuse*,
   887 F.3d 553 (2d Cir. 2018)................................................................................15, 16

*Yunus v. Robinson*,
   No. 17 CV 5839, 2018 WL 3455408 (S.D.N.Y. June 29, 2018)....................................20

*Zherka v. Amicone*,
   634 F.3d 642 (2d Cir. 2011).......................................................................8, 12, 13

**Statutes & Codes**

Building Code § 310.1.3 .........................................................................................17

Multiple Dwelling Law § 4.......................................................................................17

## PRELIMINARY STATEMENT

Defendants' motion to dismiss is a study in putting the cart before the horse.  Rather than accepting the allegations in the First Amended Complaint ("Complaint") as true and limiting their motion to legal arguments, Defendants seek to gin up their own factual record—offering eighteen new exhibits, totaling hundreds of pages—to support the assertion that Plaintiff's claims are factually false.  This is not the way litigation is conducted in the federal courts, as Defendants well know.  Especially in this case, where the core allegation is that unlawful retaliatory motives—flowing from the close political alignment between the City's leadership and the hotel industry—have infected the law enforcement process, this Court should adhere to the time-honored rule that a defendant's right to contest factual matters comes *after* discovery, not *before* an answer is filed.

With that principle in mind, Defendants' motion is readily dispatched as legally flawed.

*First*, Plaintiff alleges, clearly and with specificity, that Defendants' targeting of his modest two-family home in Brooklyn for inspection and ticketing was motivated by his protected political speech—leafletting and speaking out in favor of the home-sharing business model, and, principally, testifying before the City Council in support of Airbnb.  The close temporal proximity between the protected activity (Plaintiff's appearance at the Council hearing) and the allegedly-retaliatory government action (the inspection and ticketing of Plaintiff's home) creates a strong inference of causation.  That inference cannot be rebutted by cherry-picked internal paperwork of dubious provenance.  *See* Part I, *infra*.  Nor is the extra-record evidence of a 311 call a defense: even if a complaint was made, and that complaint was legitimate, Defendants' decision to respond to that complaint with lightning speed establishes retaliation.  Likewise, Plaintiff's allegations about the *impact* of the inspection and ticketing support the

claim of injury.  Because of Defendants' retaliatory conduct, Plaintiff will both refrain from further protected activity and be forced to contest a slew of tickets in an administrative process. This establishes, for pleading purposes, "actual chilling" or "concrete harm" under the First Amendment.

*Second*, Defendants' suggestion that the Complaint fails to allege the "personal involvement" of defendants Wong, Gillen, and Canonica is makeweight.  All three officials, along with Defendant Cautela, appeared at and conducted the retaliatory inspection of Plaintiff's home just one week after Plaintiff spoke before the City Council.  And all four behaved suspiciously, mistreated Plaintiff during the inspection, and jointly made the decision to issue the tickets.  At this stage of the proceedings, these allegations more than satisfy the pleading standard for "personal involvement."  *See* Part II(C), *infra*.

*Third*, Defendants' assertion that Plaintiff has not stated a claim for violation of his right to substantive due process is baseless.  The City's efforts to halt Plaintiff's lawful use of his two-family home, under circumstances tainted by animus towards Airbnb, is precisely the kind of interference with a "property right" that the Constitution forbids.  *See* Part III(A), *infra*. Separately, the City's decision to apply transient-use restrictions and requirements to one- and two-family homes is manifestly irrational and, on that basis alone, violates due process.  *See* Part III(B), *infra*.  Under either applicable test, Plaintiff's substantive due process claim must proceed to discovery, so that the City's motivations and whether its enforcement priorities are rationally related to its stated goals of ending "illegal hotels" can be probed.

*Fourth*, and finally, given the well-established constitutional bar on retaliatory law enforcement, and the sharply-disputed facts surrounding the motivation and propriety of the

2

Individual Defendants' conduct, qualified immunity is not available at this juncture. *See* Part IV, *infra*.

## FACTUAL BACKGROUND

Plaintiff Stanley Karol lives in a two-family home in Sunset Park, Brooklyn. Am. Compl. ¶¶ 2, 24. The home has been Plaintiff's sole place of residence for more than 50 years. *Id.* While Plaintiff has periodically rented out his basement for visitors through Airbnb, Inc., he continues to live in his home when short-term guests visit. *Id.* ¶ 33. This income allows Plaintiff, who is disabled, to afford his home. *Id.* ¶ 3, 35. Plaintiff has become an advocate of Airbnb for one- and two-family homeowners.

The hotel industry views Airbnb as its competitor in New York City. *Id.* ¶ 45. As Airbnb's popularity has increased, the hotel industry has spent large amounts of money to support anti-Airbnb political candidates and lobby government to "regulate" the Airbnb business model. *Id.* ¶¶ 46-47, 49. The industry has succeeded: in recent years, and at the urging of the hotel industry, the Mayor's Office of Special Enforcement ("OSE") has shifted its focus from stopping commercial operators of illegal hotels to targeting the one- and two-family homeowners who rent rooms through Airbnb. *Id.* ¶¶ 48-49.

Indeed, OSE has all but become an arm of the hotel industry, as its enforcement patterns increasingly reflect a naked desire to harm Airbnb. In 2015, OSE's director Elan Parra left City service and promptly became a lobbyist for the hotel industry. *Id.* ¶ 51. At that same time, OSE began to solicit investigatory referrals from the hotel industry, asking Airbnb's political opponents for specific Airbnb listings to investigate. *Id.* ¶ 53. Since 2017, the City and the hotel industry have been functionally working together, with OSE effectively outsourcing entire investigations to the hotel industry itself. *Id.* ¶¶ 54-56.

3

The attack on Airbnb—born of a political deal between the hotel industry and the City's current leadership—reflects a departure from both the settled state of the law, and the City's previous enforcement priorities.  In 2009, the First Department held that short-term rentals within a residential building were legally permissible, so long as the *primary* use of the building remained for long-term tenancy.  *City of New York v. 330 Cont'l LLC*, 60 A.D.3d 226 (1st Dep't 2009).  The state Multiple Dwelling Law was subsequently amended to effectively reverse the holding as to multifamily dwellings such as apartment buildings.  But no corresponding changes were made to any provision of law applicable to one- and two-family homes.

Accordingly, following *330 Continental*, the Mayor and City Council repeatedly emphasized that OSE's enforcement efforts would be aimed at "illegal *hotels*," and "not with the vision of going after every homeowner who occasionally participates with Airbnb."  Am. Compl. ¶¶ 5, 41-42.  These promises, as one City Councilmember noted, turned out to be a lie.  *Id.* ¶ 63 n.1.

Plaintiff, concerned by the OSE's newfound focus on homeowners, decided to speak out. In May 2018, he spoke in a pro-Airbnb television advertisement.  When the City Council introduced legislation further regulating Airbnb on June 7, 2018, Plaintiff publicly voiced his opposition.  *Id.* ¶¶ 57, 59.  He distributed fliers outside City Hall and contacted his City Councilmember to discuss the proposed legislation.  Finally, on June 26, 2018, Plaintiff testified at a public hearing on the proposed legislation.  *Id.* ¶¶ 59-63.  OSE officials and hotel industry lobbyists were present for his testimony.  *Id.* ¶¶ 64-65.

Just two days after Plaintiff's testimony, the City claimed it received an anonymous phone call about Plaintiff's home.  *Id.* ¶ 66.  The call provided no details about the home, nor did it identify any negative effects of Plaintiff's basement rental.  *Id.* ¶ 68.  Yet OSE responded to

this alleged complaint within one week of its receipt—lightning speed, by bureaucratic standards, and far faster than the nearly three months it had taken them to respond to a prior complaint about Plaintiff's home in 2017.  *Id.* ¶¶ 69-70.

On July 5, 2018, just one week after Plaintiff's testimony before the City Council, four City inspectors—Defendants Wong, Cautela, Canonica, and Gillen (collectively, the "Individual Defendants")—arrived at Plaintiff's home.  *Id.* ¶ 73.  At this point, all four inspectors knew that Plaintiff had testified before City Council, and that the inspection was intended to punish him for that speech.  *Id.* ¶¶ 74-75.  During the inspection, the Individual Defendants refused to provide Plaintiff with any explanations; instead, they mocked and intimidated him.  *Id.* ¶¶ 76-77.  They then issued four summonses requiring Plaintiff's appearance before an administrative tribunal and threatening tens of thousands of dollars in fines.  *Id.* ¶¶ 79, 81, 84.

The close temporal proximity between Plaintiff's testimony and OSE's "response," together with the other suspicious conduct of the Individual Defendants, makes OSE's "enforcement priorities" abundantly clear: punishing people who support Airbnb and criticize OSE's improper targeting of one- and two-family homeowners.  *See* Am. Compl. ¶ 71.

## ARGUMENT

Under Rule 12(b)(6), a complaint must plead sufficient facts "to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal,* 556 U.S. 662, 697 (2009).  "To be plausible, the complaint need not show a probability of plaintiff's success," but need only "evidence more than a mere possibility of a right to relief."  *Nakahata v. N.Y.-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 197 (2d Cir. 2013).  The Court must accept as true the complaint's well-pleaded factual allegations and draw all

reasonable inferences in the plaintiff's favor.  *Lopez v. Jet Blue Airways*, 662 F.3d 593, 596 (2d Cir. 2011).

The Complaint satisfies this standard.  Defendants' motion fails to grapple with, and indeed simply ignores, critical factual allegations supporting Plaintiff's claims, instead relying on irrelevant extra-record submissions to obfuscate their unlawful conduct.  Their motion should be denied.

## I.   DEFENDANTS' EXTRA-RECORD SUBMISSIONS ARE IMPROPER ON A MOTION TO DISMISS

It is axiomatic that "[a] court normally may not look beyond the four corners of the complaint in considering a motion to dismiss."  *Mayo v.  Fed. Gov't*, 558 F. App'x 55, 56 (2d Cir. 2014).  A Rule 12(b)(6) motion "is not an occasion for the court to make findings of fact." *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007).  A narrow exception to this rule exists for certain "public records," but "only to determine what the documents stated, and not to prove the truth of their contents."  *Id.*  (internal quotation marks omitted).

Defendants would have the exception swallow the rule.  They attempt to shoehorn an incredible *eighteen* exhibits—totaling hundreds of pages—into this pre-answer record, all for the Court's substantive consideration.  Defendants point to internal records from the Department of Buildings and ask this Court make the factual determination that, "on June 28, 2018, a '311' complaint [concerning plaintiff's home] was received."  Defs. Br. at 12; *see also* Exs. C, K.[1] Embedded in that request is the conclusion that the inspection was, in fact, a routine response to a 311 call, rather than an act of retaliation on the basis of political speech.  In other words, using

---

[1] Citations to "Ex." refer to the Exhibits attached to the Declaration of Carlos Fernando Ugalde Alvarez filed on September 4, 2018 as Dkt. No. 24.

records that Plaintiff has not had the opportunity to challenge or rebut, Defendants call for a factual finding in their favor on one of the *core* disputes in this case.

This is not the way litigation works.  The Complaint is clear: the alleged 311 "complaint" upon which Defendants seek to rely was fabricated or, at a minimum, was not the *actual* basis upon which the inspectors targeted Skip Karol's property.  Am. Compl. ¶ 66.  This Court cannot accept Defendants' exhibits "to prove the truth of their contents."  *Roth*, 489 F.3d at 509.  At most, the documents reflect the fact that the City has a *record* of a phone call; the Court cannot find that such a call was actually received, or was anonymously made, or was the actual basis for the inspection and eventually the tickets.  All of those facts are disputed, and all will be part of discovery in this case.[2]

Similarly, the Court should reject Defendants' efforts to introduce two news articles concerning Plaintiff and four Airbnb listings allegedly made by Plaintiff.  Defendants seem to confuse a document that is publicly available with a "public record"; courts consistently reject invitations to consider news articles and third-party website content at the 12(b)(6) stage.  *See, e.g.*, *Pirnik v. Fiat Chrysler Auto. N.V.*, No. 15 CV 7199, 2017 WL 3278928, at *4 (S.D.N.Y. Aug. 1, 2017) (judicial notice of a news report inappropriate); *Galley Schuler v. Rainforest Alliance, Inc.*, No. 2:14-CV-226, 2016 WL 10516026, at *2 (D. Vt. Feb. 10, 2016) (same for "private corporate websites").

---

[2]  Plaintiff's allegation that a 311 record was fabricated is not conclusory.  It is an inference built on other allegations, including the swiftness of the 311 call following Plaintiff's protected speech, the hotel industry's involvement in OSE investigations, and the generic nature of the call.

Defendants ought not be allowed to create a pre-answer factual record of their own choosing, and this Court should not make factual determinations based on such a one-sided record. Even if considered, none of Defendants' extra-record submissions support dismissal, as detailed below.

## II. INDIVIDUAL DEFENDANTS VIOLATED PLAINTIFF'S FIRST AMENDMENT RIGHTS BY RETALIATING AGAINST HIM FOR POLITICAL SPEECH

To state a claim for First Amendment retaliation, a plaintiff must allege that: "(1) he has a right protected by the First Amendment; (2) the defendant's actions were motivated or substantially caused by his exercise of that right; and (3) the defendant's actions caused him some injury." *Dorsett v. Cty. of Nassau*, 732 F.3d 157, 160 (2d Cir. 2013). Although "injury" in this context often involves claims that a plaintiff's speech was "actually chilled," such "actual chilling" is not required where the plaintiff suffered "some other form of concrete harm." *Zherka v. Amicone*, 634 F.3d 642, 643 (2d Cir. 2011).

Each of these elements is properly pled in the Complaint. As Defendants concede, Plaintiff alleges he engaged in protected activity by providing testimony before City Council and undertaking other pro-Airbnb public advocacy. Second, the Complaint pleads that the Individual Defendants' actions were motivated by the protected conduct, an inference based on the temporal proximity between Plaintiff's testimony and the inspection and ticketing of his home, along with the Individual Defendants' evasiveness and unprofessional behavior during the inspection. Finally, the Complaint alleges both that Plaintiff was "actually chilled" in the exercise of his First Amendment rights—he has declined to participate in further political advocacy—and that he has suffered an independent "concrete harm" by being forced to appear and defend himself at an administrative proceeding.

8

A.    **The Temporal Proximity of Plaintiff's Protected Activity and the Individual Defendants' Investigation is Highly Suggestive of Causation**

To prevail on his claim, Plaintiff "must establish only that the speech in question was a substantial or motivating factor" in the Individuals Defendants' investigation.  *DePace v. Flaherty*, 183 F. Supp. 2d 633, 639 (S.D.N.Y. 2002) (internal quotation marks omitted). "Causation generally is a question for the finder of fact."  *Id.* at 638.  At this stage, "the plaintiff's pleading need not clearly establish that the defendant harbored retaliatory intent.  It is sufficient to allege facts which could *reasonably support an inference* to that effect."  *Posr v. Court Officer Shield No. 207*, 180 F.3d 409, 418 (2d Cir. 1999) (emphasis added).  In making this determination, "[t]emporal proximity is strong circumstantial evidence of improper intent." *Stajic v. City of New York*, 214 F. Supp. 3d 230, 235 (S.D.N.Y. 2016) (alteration in original).

Plaintiff has sufficiently alleged facts supporting the inference that the July 5, 2018 investigation was motivated by retaliatory animus.  Just *nine days* after testifying before City Council, the Individual Defendants appeared at Plaintiff's home, acted evasively, treated him poorly, and then issued four summonses commanding his appearance before an administrative tribunal.  Am. Compl. ¶¶ 63, 73.  The temporal proximity of Plaintiff's protected conduct and the retaliatory investigation is sufficient on its own to establish a plausible inference of causation. *See Espinal v. Goord*, 558 F.3d 119, 129 (2d Cir. 2009) (six-month gap between protected conduct and retaliatory action supported causation).  But the Complaint alleges more: that that the Defendants knew that no anonymous 311 complaint was ever received about Plaintiff's property or that the so-called complaint was actually made by a hotel industry operative.  Am. Compl. ¶¶ 66-68.

Defendants assert that the inspection was the result of an anonymous 311 complaint allegedly received, and that their "legal obligation" to investigate such complaints exonerates

9

them.  Defs. Br. at 12.  This improperly credits extra-record evidence to establish that an "anonymous call" was made, and was made in good, rather than bad, faith.  Making such factual leaps would be improper at the pre-answer stage.  *See supra*, Section I.[3]

Notably, a relevant comparator exists: the City's previous response to a 311 call about the very address at issue here.  In 2017, a 311 complaint about Plaintiff's basement was not investigated for nearly three months.  Am. Compl. ¶¶ 36-37, 69.  Just one year later, immediately following Plaintiff's protected speech, the Individual Defendants responded to a similar 311 complaint—allegedly received just two days after Plaintiff's public testimony—within *one week*. *Id.* ¶¶ 66, 70, 73, 94.  Plaintiff's home became an apparent priority for enforcement even though it was just one of many complaints received through 311.  *Id.* ¶ 70.  As the Complaint plausibly alleges, assuming a 311 call was made about Plaintiff's home in 2018, the *only* difference between the two complaints would have been Plaintiff's public pro-Airbnb advocacy.

Defendants' motion papers also ignore the Individuals Defendants' highly suspicious conduct: not only their atypical speed in "responding" to an alleged 311 call, but also their unwillingness or inability to provide any legitimate explanation as to why they were investigating, why they had prioritized the call about Plaintiff's home, or why they acted with such haste.  Am. Compl. ¶ 77.  All of this supports the plausible inference of a hidden, unlawful motive.

---

[3] Even if such a call was made, City lawmakers have raised "concerns about unreliable or retributive telephone complaints of this sort."  Am. Compl. ¶ 67.

Next, Defendants seek dismissal claiming Plaintiff's rental of his basement was unlawful, justifying the inspection and ticketing.  But Plaintiff's rental was *lawful*, since his "home was used for permanent occupancy 'as a rule,'" as detailed below.  Am. Compl. ¶ 101; *see infra* Section III(A)(1).  And even if Plaintiff's use of his property somehow violated local law, the Individual Defendants could not escape liability.  Plaintiff has alleged that the Individual Defendants would not have responded—and, on a prior occasion, *in fact did not respond*—with anywhere near the same sense of urgency had he not testified before City Council.  No more is necessary.  *See Smith v. Cty. of Suffolk*, 776 F.3d 114, 123 (2d Cir. 2015) (question is not whether "some adverse action" would have been taken, but whether agency "would have reached *the same decision*" absent protected conduct (emphasis in original)); *Saleh v. City of New York*, No. 06 Civ. 1007, 2007 WL 4437167, at *5 (S.D.N.Y. Dec. 17, 2007) (plaintiff alleging First Amendment retaliation need not demonstrate absence of probable cause).

Next, Defendants suggest that the First Amendment claim should be dismissed because Plaintiff has not pleaded the specific *mechanism* by which the Individual Defendants learned of Plaintiff's identity.  Defs. Br. at 12-13.  This argument, if accepted, would impose far too great a burden on plaintiffs in cases of this sort—a burden wholly foreign to the concept of "simplified notice pleading."  *DiPetto v. U.S. Postal Serv.*, 383 F. App'x 102, 103 (2d Cir. 2010).  The Complaint alleges that Plaintiff's testimony was public and that the Individual Defendants knew that the inspection was in retaliation for his testimony.  Am. Compl. ¶¶ 72, 74, 75.  That is all that is required at this stage.  *See Jeune v. Crew*, Nos. 16 CV 1107, 16 CV 1108, 16 CV 2437, 2017 WL 4357382, at *17 (E.D.N.Y. Sept. 29, 2017) (analyzing only whether complaint "allege[d] that any of the Defendants were aware of [the protected activity]").  The fact that Plaintiff was one of only about a dozen Airbnb hosts who testified at the June 2018 hearing, and

11

that his address was already known to OSE by virtue of the 2017 summonses, further supports the inference that the Individual Defendants were aware of Plaintiff's identity and his public statements.  Explanations of *how* each Individual Defendant came to know of Plaintiff's identity and testimony—facts peculiarly within the Individual Defendants' knowledge—is not required.

### B.   Plaintiff Has Been Actually Chilled, and Has Suffered a Concrete Harm Through the Issuance of Tickets Requiring His Appearance in Court

To demonstrate "injury" in a First Amendment retaliation claim, a plaintiff must generally allege that his speech has been "actually chilled" by retaliatory actions.  However, it is unnecessary to plead such "actual chilling" where the retaliation carries with it "some other form of concrete harm."  *Zherka*, 634 F.3d at 643.  Here, Plaintiff has adequately alleged both forms of constitutional injury.

### 1.   *Mr. Karol's Protected Conduct Has Been Actually Chilled*

The requirement to plead "actual chilling" is not particularly stringent: so long as the plaintiff can identify a "threat of specific future harm" attendant to protected conduct, "actual chilling" has been sufficiently pled.  *Curley v. Vill. of Suffern*, 268 F.3d 65, 73 (2d Cir. 2001). Importantly, a plaintiff need not show that he has ceased *all* advocacy in order to state a retaliation claim; ceasing *some* such activities is more than enough.  *See Jones v. Bay Shore Union Free Sch. Dist.*, 947 F. Supp. 2d 270, 275 (E.D.N.Y. 2013) (finding actual chilling where plaintiff ceased attending school board meetings but continued to speak out to press).

The Complaint readily meets this standard.  For fear of (further) retaliation, Plaintiff has ceased engaging in at least one protected activity—distributing fliers at City Council to oppose further legislation about Airbnb—and will decline to participate further in the public advocacy. Am. Compl. ¶¶ 86-88, 96.  This change in behavior is the definition of "actual chilling."

12

Defendants' arguments on this issue are an effort to muddy the waters. They ignore

Plaintiff's leafletting, instead suggesting that, because "there have been no further scheduled

public hearings on any proposed legislation to regulate the short-term rental market," Plaintiff

has not been actually chilled. Defs. Br. at 14. This assertion—found nowhere in the

Complaint—implicates factual questions that cannot be resolved at this preliminary stage.

Likewise, Defendants cannot properly rely upon an extra-record source in the form of an

interview Plaintiff gave to the press on the day he filed the instant action. *Id.* & Exs. M, N.

While a statement to the press (assuming one was made) may be the basis one day for questions

at a deposition, it is not a basis for dismissal.

As Plaintiff has alleged that his right to participate in the legislative process has been

chilled and that he has declined to engage in further flier distribution, he has adequately alleged

actual chilling.

2.      *The Inspection and Resulting Tickets Requiring Plaintiff's Appearance Before an Administrative Tribunal Is an Independent Concrete Harm*

In addition to actual chilling, Plaintiff also alleges "other concrete harm." Courts have

found a wide range of governmental conduct to satisfy the requirement of a "concrete harm" for

purposes of First Amendment retaliation claims. *See, e.g.*, *Zherka*, 634 F.3d at 646 (lost

government contract); *Tabbaa v.  Chertoff*, 509 F.3d 89, 102 (2d Cir. 2007) (additional scrutiny

at border crossing); *Dougherty v.  Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 90

(2d Cir. 2002) (revoking building permit); *Gagliardi v. Vill. of Pawling*, 18 F.3d 188, 195 (2d

Cir. 1994) (refusal to enforce zoning laws). Even harms as minimal as being blocked by a public

department's social media page can constitute a concrete harm. *See Dingwell v. Cossette*, No.

3:17-CV-01531, 2018 WL 2926287, at *4-*5 (D. Conn. June 7, 2018).

In light of this low threshold, Plaintiff's allegations are more than sufficient to establish a "concrete harm"; by issuing Plaintiff four citations that require him to appear before an administrative tribunal and potentially face steep fines, the Individual Defendants have worked a concrete harm on Mr. Karol.  Am. Compl. ¶¶ 79, 81, 84, 85.  Recent Second Circuit precedent squarely supports this conclusion.  In *Smith v. Campbell*, the Circuit held that a state trooper's issuance of traffic tickets requiring the plaintiff to appear for a hearing constituted a sufficient injury to establish a retaliation claim.  782 F.3d 93, 100 (2d Cir. 2015) ("[I]ssuance of the tickets was an injury in that it subjected her to a state action requiring that she either appear in court, pay a fine, or both.").  Whether and how much of a fine would be assessed is unimportant; the fact "[t]hat the full scope of [plaintiff's] injury was not known at that time, including whether or not [plaintiff] would be convicted of the traffic infractions and that Campbell would continue harassment, does not alter the date that her cause of action accrued."  *Id.*

Given both the "actual chill" and the concrete harm that he has suffered, Plaintiff has more than adequately alleged that the retaliatory inspection and ticketing has caused him injury.

## C.   Because the Inspection Itself Was Retaliatory, All Four Individual Defendants Were Personally Involved in Violating Plaintiff's Rights

Plaintiff adequately alleges that all Individual Defendants were personally involved in the violation of his rights.  First, in this case, the retaliatory conduct at issue was *both* the inspection of Skip Karol's home and the issuance of the tickets.  All four of the Individual Defendants took part in the inspection.  All four went to Plaintiff's home and questioned him about the use of his basement.  Am. Compl. ¶¶ 70, 73, 76-77.

Likewise, all four Individual Defendants were involved in the issuance of the tickets. The Complaint alleges the "Individual Defendants issued" Plaintiff the tickets and "posted" them on his door.  Am. Compl. ¶¶ 79, 118.  The Individual Defendants were each physically present at

Plaintiff's home when the tickets were issued, and the Complaint asserts that the four acted collectively. An officer can participate in a constitutional violation by participating in the decision himself (which goes beyond affixing one's signature) or by "failing to act on information indicating that unconstitutional acts were occurring." *Littlejohn v. City of New York*, 795 F.3d 297, 314 (2d Cir. 2015). The tickets have a space for just one signature. That Defendant Catuela happened to be the designated signatory does not relieve his colleagues of responsibility for their role in the decision to issue the tickets.

Discovery is appropriate to determine each Individual Defendant's role in the investigation and the decision to issue the tickets. At the pleading stage, there is no reason to dismiss any Individual Defendant.

### III.   THE CITY'S APPLICATION OF SHORT-TERM RENTAL PROSCRIPTIONS TO PLAINTIFF'S TWO-FAMILY HOME VIOLATES SUBSTANTIVE DUE PROCESS

Substantive due process protects individuals against "government action that is arbitrary, conscience-shocking, or oppressive in a constitutional sense." *Nnebe v. Daus*, 184 F. Supp. 3d 54, 70 (S.D.N.Y. 2016), *appeal dismissed*, May 25, 2016. A plaintiff may establish a substantive due process violation in one of two ways. First, the plaintiff may show that his fundamental rights were infringed upon by conduct that was "tainted with" some arbitrariness or irrationality, such as animus. *Cine SK8, Inc. v. Town of Henrietta*, 507 F.3d 778, 785 (2d Cir. 2007). Second, "[w]here . . . a statute neither interferes with a fundamental right nor singles out a suspect classification . . . a plaintiff can demonstrate that there is no rational relationship between the legislation and a legitimate legislative purpose." *Molinari v. Bloomberg*, 564 F.3d 587, 606 (2d Cir. 2009); *accord Winston v. City of Syracuse*, 887 F.3d 553, 566 (2d Cir. 2018) (applying standard to city's enforcement of statute against. Ignoring settled law, Defendants ask this Court

15

to adopt a hybrid, novel theory—that a plaintiff must show the existence of a fundamental right, conscience-shocking conduct, *and* the absence of minimum rationality.  Defs. Br. at 15.  Neither their proffered authority nor any other court has so held; rather, courts have consistently recognized these as two distinct formulations of substantive due process.  *See Winston*, 887 F.3d at 566 n.11 (substantive due process can be violated by "arbitrary" or "outrageous" conduct *or* conduct that "cannot satisfy rational basis review").

Plaintiff has sufficiently alleged a substantive due process violation under *either* standard.  The City's position that Plaintiff cannot rent his basement on a short-term basis implicates Plaintiff's fundamental right to the unfettered use of his property.  And the City's abrupt decision to apply the occupancy restrictions on multifamily dwellings to one- and two-family homes, notwithstanding clear authority and its own prior interpretation to the contrary, is the definition of arbitrary government conduct.

A.    **The City Has Infringed Upon Plaintiff's Fundamental Right to Use His Property in a Way Tainted With Impermissible Animus**

Plaintiff has alleged a violation of one of the most central of constitutional rights: the right to unfettered and lawful use of his own property.  As he alleges—and as discovery will show—the City's decision to infringe on this right by enforcing transient-use restrictions against him was tainted by an impermissible animus towards Airbnb.

1.    *Plaintiff Has a Property Interest in the Lawful Use of His Property*

It is beyond cavil that "the right to use property for lawful purposes is one of the most fundamental rights protected by our Constitution[.]"  *Goodspeed Airport, LLC v. East Haddam Land Tr., Inc.*, No. CIVA3:01CV403, 2005 WL 1403822, at *2 (D. Conn. June 13, 2005); *accord Phillip v. Univ. of Rochester*, 316 F.3d 291, 295 (2d Cir. 2003).  Thus, where a municipal entity attempts to enjoin citizens from a use of their own property that is permitted under existing

law, substantive due process is violated.  *See, e.g.*, *Gavlak v. Town of Somers*, 267 F. Supp. 2d 214, 222-23 (D. Conn. 2003).

The lawfulness of Plaintiff's use of his own home for Airbnb hosting is established by both the seminal case of *City of New York v. 330 Continental LLC*, 60 A.D.3d 226 (1st Dep't 2009) and subsequent developments in state law.  In *330 Continental,* the City attempted to enjoin an apartment building's owners from renting out units to tenants for periods of under 30 days.  In denying the City's motion for a preliminary injunction, the First Department expressly held that short-term rental of even complete dwelling units within a large building is permissible so long as the building was used "as a rule" for long-term residency, which was satisfied where the building's primary use remained long-term occupancy.  *330 Cont'l*, 60 A.D.3d at 231 (quoting Multiple Dwelling Law § 4(8)(a)).  The same statutory language at issue in *330 Continental*—focusing on how buildings are used "as a rule"—is found in the Building Code's provisions regulating one- and two-family homes.  *See* Building Code § 310.1.3.  While *330 Continental* was decided under the Multiple Dwelling Law, its interpretation of language used in both the Multiple Dwelling Law and the Building Code was equally applicable to one- and two-family homes.  *See Clinton Rising v.  N.Y.C. Envtl. Control Bd.*, Index No. 506983/17, 2018 N.Y. Misc. LEXIS 2102, at *5 (Sup. Ct. Kings Co. May 11, 2018) (noting that interpretations of the Multiple Dwelling Law bear on the requirements of the Building Code where both use substantially similar language).

Thus, after *330 Continental*, so long as their primary use—their use "as a rule"—remained for long-term residents, spaces in homes like Plaintiff's could lawfully be made available for short-term rentals.  While the state Legislature subsequently amended the Multiple Dwelling Law to reverse that decision and foreclose this option in multifamily dwellings, neither

17

the state nor the City made any corresponding efforts to amend any provision of law applicable to one- and two-family homes.  Because Plaintiff has a two-family home whose "primary use" is residential, it is legal for him to host Airbnb guests.  Am. Compl. ¶ 101.  Indeed, as the Complaint alleges, the City Council, the Mayor, and OSE itself expressly confirmed that the transient-use regulations would *not* be applied to owners of one- and two-family homes who participated in home-sharing.  *Id.* ¶¶ 41-42, 63 n.1.  Until the last few years, *every branch of City government* had confirmed that what Plaintiff did was lawful.

Defendants do not even acknowledge the import of *330 Continental*, much less the numerous statements by City officials that what Plaintiff did here was lawful.  For over fifty years, the primary use of the Karol home has consistently been as a permanent residence—for Skip Karol himself.  Rather than engage with that reality, Defendants make the puzzling and false assertion that Plaintiff "does not dispute" that he violated local law.  *See, e.g.*, Defs. Br. at 1, 12, 16.  Defendants ignore Plaintiff's numerous allegations that the regulations cited by the City are "inapplicable" to his home, that short-term rental of his basement was "permissible so long as his home was used for permanent occupancy 'as a rule,'" and that the new enforcement campaign "ignores the City and State law's different treatment of [one- and two-family homes compared to multifamily dwellings]."  Am. Compl. ¶¶ 83, 101, 105.

Plaintiff has stated a claim that the summonses he received constitute government overreach, regardless of whether being required to appear to defend against a valid summons implicates a property interest.  *See* Defs. Br. at 15-16.  Defendants cite no authority for the proposition that a summons charging a homeowner with violations of inapplicable regulations is not a due process violation.  Nor could they.  *See, e.g., Gavlak*, 267 F. Supp. 2d at 222-23.

18

2.      *The City's Decision to Begin Targeting One- and Two-Family Homeowners Was Tainted With Impermissible Animus*

Because Mr. Karol has identified an interference with his fundamental right to continue a lawful use of his property, he need only show that the City's decision to enforce transient-use proscriptions against him was "tainted with" impermissible animus. *Cine SK8, Inc.*, 507 F.3d at 785. Plaintiff need not show that the impermissible animus was the *sole* motivating factor in the decision; if animus played *any* actual role, his claim survives. *Id.*; *see also 49 WB, LLC v. Village of Haverstraw*, No. 08 CV 5784, 2012 WL 336152, at *6 (S.D.N.Y. Feb. 2, 2012) (government may not exercise its authority for impermissible goals, even if such actions could be taken for other reasons).

Plaintiff's allegations easily clear this threshold. The Complaint alleges that the City's sudden enforcement initiative against one- and two-family homeowners is driven by the hotel industry's political and financial support. Am. Compl. ¶¶ 44-47. This lobbying was the direct cause of the City's otherwise-unexplained decision to target homeowners like Plaintiff. *Id.* ¶ 48. Indeed, the City has started outsourcing entire investigations to hotel industry executives—direct financial competitors of Airbnb. *Id.* ¶¶ 55-56. This tacit alliance supports a natural inference that the City's new policy is "motivated by animus against Airbnb and seeks to dissuade homeowners from listing their homes on Airbnb." *Id.* ¶ 103. While the City will, of course, be entitled to challenge these allegations through discovery, Plaintiff has alleged enough facts that, if proven, establish that the City deprived him of a fundamental right for an impermissible purpose. *Cf. City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 446-47 (1985); *U.S. Dep't of Agriculture v. Moreno*, 413 U.S. 528, 534 (1973) (a "bare congressional desire to harm a politically unpopular group" is an impermissible basis for government action).

19

### B.       The City's Newfound Policy of Targeting One- and Two-Family Homeowners Lacks Minimum Rationality

Plaintiff has also alleged a substantive due process violation for the additional yet distinct reason that the City's newfound policy lacks any rational relationship to its stated purpose. Although rational-basis review is deferential, "a state may not rely on a classification whose relationship to an asserted goal is so attenuated as to render the distinction arbitrary or irrational." *Yunus v. Robinson*, No. 17 CV 5839, 2018 WL 3455408, at *21 (S.D.N.Y. June 29, 2018) (quoting *City of Cleburne*, 473 U.S. at 446). In making this assessment, courts "must take into account the countervailing costs to the targets" of the government action. *Id.* at *23 (quoting *Plyler v. Doe*, 457 U.S. 202, 223-24 (1982)).

As alleged in the Complaint, the City has emphasized that its transient-use proscriptions seek to preserve apartments for long-term tenants by targeting large-scale operators of illegal hotels. Am. Compl. ¶¶ 5, 41-42, 62 n.1. The City was clear that its enforcement focus would be those who "put people in unsafe conditions and take affordable homes off the market." *Id.* ¶ 41. Plaintiff's rental of his basement in no way endangered public safety or "took any affordable homes off the market," as discovery will demonstrate. The City's enforcement actions against him bear *no* relation to the stated goal of preserving affordable units for long-term tenancies -- which, in any event, is a question for factual discovery. *Id.* ¶¶ 102-03. In light of the City's sudden, politically-motivated, and entirely-unprincipled change in position with respect to homes like Plaintiff's, the Complaint states a plausible due process claim. *Cf. El Badrawi v. U.S.*, 787 F. Supp. 2d 204, 223-24 (D. Conn. 2011) (due process may be violated where an agency changes its interpretation in a way that works "unfair surprise").

Strengthening this conclusion is the "countervailing cost" of the City's decision to target homeowners like Plaintiff. As the Complaint alleges, Plaintiff relies on the income he receives

20

from Airbnb to supplement his modest disability payments; without it, he cannot stay in his childhood home, and fears its loss.  Am. Compl. ¶¶ 3, 89.

Defendants fail to identify any *other* stated goal of the City's transient-use regulations, or to explain how enforcement of transient-use proscriptions against individuals like Plaintiff—who live year-round in their homes, and simply rent parts of their homes to short-term guests—is related to the stated goals of preserving affordable housing in the City or enhancing public safety.  Whether any such connection exists is a question to be resolved through discovery, not under Rule 12.  *Cf. Weaver v. Amato*, No. 9:12-CV-684, 2013 WL 5355065, at *17 (N.D.N.Y. Sept. 24, 2013) (holding that rationality of a policy's classification scheme was a question of fact to be determined by "factual and statistical evidence").

Under either formulation of substantive due process, Plaintiff has adequately stated a claim.

## IV.  QUALIFIED IMMUNITY IS UNAVAILABLE FOR RETALIATORY INVESTIGATIONS

Qualified immunity protects individual officers who reasonably believe that their actions do not violate clearly established federal law.  *Iqbal v. Hasty*, 490 F.3d 143, 152 (2d Cir. 2007). This does not require precedent from exactly analogous factual situations; "officials can still be on notice that their conduct violates established law even in novel factual circumstances." *Hope v. Pelzer*, 536 U.S. 730, 741 (2002).  Because this inquiry is generally fact-specific, "'[u]sually, the defense of qualified immunity cannot support the grant of a [Rule] 12(b)(6) motion.'"  *Edrei v. City of New York*, 254 F. Supp. 3d 565, 576 (S.D.N.Y. 2017) (quoting *McKenna v. Wright*, 386 F.3d 432, 435 (2d Cir. 2004) (brackets in original)).

Plaintiff has alleged that the Individual Defendants inspected his home and issued him four summonses in retaliation for quintessentially First Amendment protected conduct—

petitioning the government.  It is clearly established that testimony before a legislative body "is a clear-cut example of solicitation of governmental action through the legislative process" that is "'fully protected by the First Amendment[.]'"  *U.S.  Football League v. Nat'l Football League*, No. 84 Civ. 7484, 1986 WL 5623, at *1 (S.D.N.Y. May 15, 1986) (quoting *Miracle Mile Assocs. v. City of Rochester*, 617 F.2d 18, 20 (2d Cir. 1980)).  And as the Second Circuit stated in 2015, the issuance of tickets in retaliation for protected conduct clearly violates the First Amendment.  *See Smith*, 782 F.3d at 100.  In an analogous situation just last year, this Court denied qualified immunity to officers who drew up criminal charges on individuals in response to their political participation.  *See Case v. City of New York*, 233 F. Supp. 3d 372, 390-91 (S.D.N.Y. 2017).

Plaintiff has alleged that the Individual Defendants issued him tickets for the express purpose of retaliating against him for his political criticism of proposed legislation.  Because he has identified the sort of harm that is "at the heart of what the Bill of Rights was designed to safeguard," *Jones v. Parmley*, 465 F.3d 46, 56 (2d Cir. 2006) (denying qualified immunity to officers who arrested plaintiffs for political participation), the Individual Defendants are not entitled to qualified immunity at this stage.[4]

## CONCLUSION

Defendants cannot avoid dismissal of Plaintiff's First Amendment retaliation claim where they inspected Plaintiff's home and issued tickets just nine days after his protected activity— particularly given their suspicious on-scene conduct and in comparison to the three-month

---

[4] Defendants appropriately do not assert qualified immunity against Plaintiff's due process claim, because no individuals are named as defendants for that claim, and the municipality cannot assert qualified immunity.  *See Askins v. Doe No. 1*, 727 F.3d 248, 254 (2d Cir. 2013).

"response time" in 2017.  The Individual Defendants are all implicated in this retaliatory inspection and cannot assert qualified immunity because the illegality of retaliatory investigations has long been clearly established.  The City violated Plaintiff's Due Process rights by targeting his home because of anti-Airbnb animus.  The City both interfered with his right to lawful use of his property and, separately, acted in an irrational, and thus unlawful, manner. Defendants' motion should be denied in its entirety.


Dated:      New York, New York
            October 2, 2018

                                    EMERY CELLI BRINCKERHOFF
                                    & ABADY LLP

                                    _____/s/_____
                                    Andrew G. Celli, Jr.
                                    Debra L. Greenberger
                                    Ashok Chandran

                                    600 Fifth Avenue, 10th Floor
                                    New York, New York 10020
                                    (212) 763-5000

                                    *Attorneys for Plaintiffs*

23

## **CERTIFICATION**

Undersigned counsel certifies that this brief complies with the formatting requirements of Rule 2(D) of the Court's Individual Rules of Practice insofar as it contains: (1) 6850 words; (2) a table of contents and table of authorities; (3) double-spaced, legible font in both text and footnotes; and (4) reasonable margins.

Dated:    New York, New York
          October 2, 2018

                                        _____/s/_____
                                        Andrew G. Celli, Jr.
                                        Debra Greenberger
                                        Ashok Chandran

                                        *Attorneys for Plaintiffs*

24