USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 7/3/19

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

STANLEY KAROL,

                Plaintiff,

     - against -

CITY OF NEW YORK ET AL.,

                Defendants.

18-cv-6467 (JGK)

MEMORANDUM OPINION &
ORDER

JOHN G. KOELTL, District Judge:

    The plaintiff, Stanley Karol, brings this action under 42 U.S.C. § 1983 against the City of New York ("the City") and various City employees[1] (collectively, "the individual defendants"). The plaintiff claims that the defendants violated the plaintiff's rights under the First and Fourteenth Amendments by retaliating against him for his speech regarding the City's stance against short-term home rentals through the website Airbnb. The plaintiff also brings a substantive due process claim under the Fourteenth Amendment, alleging that it is not rational for the City to bring enforcement actions against homeowners who rent one- and two-family homes through Airbnb.

    The defendants move to dismiss the plaintiff's First Amended Complaint ("FAC") under Federal Rule of Civil Procedure

---

[1] The individual defendants are Kenneth K. Wong, an Associate Fire Protection Inspector with the Fire Department of New York; Eduardo Cautela, a Construction Inspector with the New York City Department of Buildings; Robert P. Canonica, a Deputy Sheriff with the New York City Sheriff's Office; and Michael J. Gillen, a Fraud Investigator with the New York City Sheriff's Office.

12(b)(6) for failing to state a claim upon which relief can be granted. For the reasons stated below, the defendants' motion is **granted in part and denied in part.**

## I.

In deciding a motion to dismiss pursuant to Rule 12(b)(6), the allegations in the complaint are accepted as true, and all reasonable inferences must be drawn in the plaintiff's favor. McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007). The Court's function on a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir. 1985). The Court should not dismiss the complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). While the Court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions." Id.

When presented with a motion to dismiss pursuant to Rule
12(b)(6), the Court may consider documents that are referenced
in the complaint, documents that the plaintiff relied on in
bringing suit and that are either in the plaintiff's possession
or that the plaintiff knew of when bringing suit, or matters of
which judicial notice may be taken. See Taylor v. Vt. Dep't of
Educ., 313 F.3d 768, 776 (2d Cir. 2002); Chambers v. Time
Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002).

## II.

The following facts are taken from the FAC and are accepted
as true for the purposes of the defendants' motion to dismiss.

The plaintiff, Stanley "Skip" Karol, is a fifty-eight-year-
old man who has lived in the same two-family home in Sunset
Park, Brooklyn, for fifty-seven years. FAC ¶¶ 2, 24. The
plaintiff's home is zoned for two families. Id. ¶ 25. The home
has two floors and a basement. Id. The second floor has four
bedrooms and one bathroom. The first floor has a living room,
dining room, bathroom, and kitchen. The basement has a kitchen,
a bathroom, and a large general-purpose room. Id.

The plaintiff is disabled, and to supplement his limited
disability payments, he rents out rooms in his home using the
online home-sharing platform Airbnb. Id. ¶ 3. Without the income
that the plaintiff receives through Airbnb, he would not be able

to afford the costs of home ownership, including his mortgage, utility bills, and taxes. Id. ¶¶ 3, 28, 34.

The plaintiff first began renting portions of his home to short-term guests through Airbnb in or about 2013. Id. ¶ 30. The plaintiff continues to live inside his home while his short-term guests stay there. Id. Many people have paid to rent portions of the plaintiff's home, and the income the plaintiff has earned through Airbnb rentals has proven invaluable to him. Id. ¶ 34.

On approximately February 12, 2017, a 311 complaint was made to the Mayor's Office of Special Enforcement ("OSE") regarding the plaintiff's use of Airbnb to rent portions of his home. Id. ¶ 36. OSE responded to the 311 complaint two and a half months later by sending inspectors to the plaintiff's home. Id. ¶ 37. The inspectors issued four citations. Id. ¶ 38. The citations were later dismissed because they had been issued in the name of the plaintiff's mother who was deceased. Id. To the best of the plaintiff's knowledge, those citations were never reissued. Id.

In recent years, OSE has increased its enforcement efforts against short-term Airbnb rentals by issuing numerous citations to persons who rent out one- and two-family homes through Airbnb. Id. ¶¶ 4, 39. OSE bases these citations on the premise that these short-term rentals violate the New York State Multiple Dwelling Law, or that the hosts have illegally

4

converted their homes to transient occupancy.[2] Id. ¶ 39. The
plaintiff states that OSE's enforcement against these small-
scale rentals is contrary to statements made by City officials,
including City Council representatives, who have insisted that
OSE would only target "operators of illegal hotels who put
people in unsafe conditions and take affordable homes off the
market." Id. ¶ 41.

Recently, as part of the administration's regulation of the
short-term rental market, the City proposed legislation that
would require Airbnb to disclose information about Airbnb hosts
to OSE, including their names, addresses, and contact
information. Id. ¶¶ 8, 57. The plaintiff believes that this
legislation was influenced heavily by the hotel industry, which
is comprised of hotel owners and the union that represents hotel
workers -- namely, the New York Hotel and Motel Trades Council.
Id. ¶¶ 44, 49, 52-56. The hotel industry views Airbnb as a
competitive threat because it believes the availability of
Airbnb rentals decreases the demand by out-of-town visitors for
hotel rooms. Id. ¶ 45. The hotel industry has donated hundreds
of thousands of dollars to the campaigns of Mayor de Blasio and

---

[2] The term "transient occupancy" refers to rentals that last less than
thirty days. See City of New York v. 330 Cont'l LLC, 873 N.Y.S.2d 9,
11 (App. Div. 2009) ("The City refers to occupancies of less than 30
days as 'transient occupancy,' a phrase that apparently is not defined
in any statute, ordinance, resolution, regulation, advisory opinion or
administrative notice.").

City Council members. Id. ¶¶ 46-47. In short, the plaintiff

alleges that the hotel industry supported the proposed

legislation to quell the competitive threat posed by Airbnb.

The plaintiff worried that the combination of OSE

enforcement against short-term Airbnb rentals and the proposed

legislation would pose a challenge to his ability to rent

portions of his home through Airbnb. As a consequence, the

plaintiff believed that he would be unable to afford the costs

associated with living in his home. Id. ¶ 9. Accordingly, the

plaintiff has spoken out against the proposed legislation and

the City's enforcement against short-term Airbnb rentals. Id.

¶¶ 9-10.

The plaintiff's speech activities include distributing

fliers near City Hall, contacting his City Council

representative to express his opposition to the proposed

legislation and to inquire about further opportunities for

public input, and appearing in a television advertisement that

highlighted the hotel industry's alleged attack against Airbnb

hosts. Id. ¶¶ 60-62. On June 26, 2018, the plaintiff testified

at a City Council hearing regarding the proposed legislation.

Id. ¶¶ 10, 63. At that hearing, the plaintiff opposed the

proposed legislation and criticized OSE's enforcement efforts

against Airbnb hosts. Id. ¶ 63. OSE officials and members of the

hotel industry attended the June 26 hearing. Id. ¶ 64. The

plaintiff alleges that OSE and members of the hotel industry
identified people who opposed the legislation at the City
Council meeting for the purpose of targeting them. Id. ¶ 65.

Nine days after the plaintiff attended the public hearing
to criticize the de Blasio administration and the proposed
legislation, OSE enforcement officers -- namely, the individual
defendants -- visited the plaintiff's home. Id. ¶¶ 10, 73. The
individual defendants arrived at the plaintiff's home around
9:00 in the morning on July 5, 2018. Id. ¶ 73. The timing of
this inspection was significant to the plaintiff because the
plaintiff had an appointment scheduled that day to discuss the
proposed legislation further with a City Council member. Id.

The individual defendants began to question the plaintiff
about his home. Id. ¶ 76. The plaintiff informed the officers
that he suffers from epilepsy and cautioned them that the stress
of the inspection could cause a seizure. Id. The plaintiff then
asked for the officers' badge numbers, and an officer responded
by stating in a mocking tone that he would write the badge
numbers down so that the plaintiff would not have a seizure. Id.
The plaintiff asked the officers why they were inspecting his
home. Id. ¶ 77. The officers told the plaintiff that they had
received an anonymous phone complaint regarding the plaintiff's
home, but they did not provide additional information about the
complaint. Id.

At the end of the inspection, the officers affixed four summonses to the plaintiff's door. Id. ¶ 79. In total, the four summonses threatened the plaintiff with a possibility of up to $32,000 in fines -- an amount that would be insurmountable for the plaintiff because of his limited means. Id. ¶ 84.

The plaintiff alleges that the individual defendants were aware of the plaintiff's speech activities at the time that they came to inspect his home, and that the inspection was made in retaliation for that speech. Id. ¶¶ 11, 74-75. The plaintiff does not believe that a 311 call was made regarding his home, and asserts that if such a call was made, it was made by a hotel industry operator. Id. ¶ 66. Further, the plaintiff alleges that all four of the citations issued against him are baseless. Id. ¶ 82. The plaintiff asserts that despite being the owner of a two-family home, OSE has insisted that the plaintiff comply with building code requirements applicable to a hotel and that are otherwise inapplicable to homes that are primarily occupied as a residence. Id. ¶ 83. The plaintiff believes that these circumstances, taken together, demonstrate the defendants' retaliatory motives.

Further, the plaintiff believes that the timing of the alleged 311 call and the quick response to the 311 complaint is evidence of retaliatory motive. The alleged 311 call was made only two days after the plaintiff testified at the City Council

hearing, and the defendants responded to the call within seven days, which is a significantly shorter than the two-and-a-half-month response time for the 2017 311 complaint. Id. ¶¶ 66, 69-72, 94. The plaintiff also alleges that the response time is suspect because the alleged 311 complaint did not raise specific concerns such as trash accumulation or loud parties, so the alleged 311 complaint did not raise any concerns to make inspecting his home a high priority. Id. ¶¶ 67-68.

The plaintiff says that the defendants' actions have made him wary to advocate on behalf of the short-term rental market. Id. ¶ 88. The plaintiff has stopped distributing fliers. Id. ¶¶ 87, 96. He does not intend to testify at any future public hearings, nor does he plan to inquire about future opportunities to express his views. Id. ¶¶ 87, 96. Moreover, he is afraid to continue renting rooms in his home. Id. ¶ 89.

On the basis of these allegations, the plaintiff brought this lawsuit claiming that the defendants retaliated against him for his speech in violation of the First and Fourteenth Amendments, and that by targeting one- and two-family homes, the defendants have violated the Due Process Clause of the Fourteenth Amendment.

## III.

### A.

The defendants first argue that the plaintiff has failed to state a First Amendment retaliation claim. To bring a First Amendment retaliation claim under 42 U.S.C. § 1983, the plaintiff must plead that "(1) he has a right protected by the First Amendment; (2) the defendant[s'] actions were motivated or substantially caused by his exercise of that right; and (3) the defendant[s'] actions caused him some injury." Dorsett v. Cty. of Nassau, 732 F.3d 157, 160 (2d Cir. 2013) (per curiam). The defendants do not dispute that the plaintiff has established the first element.[3]

Rather, the defendants focus on the second and third elements, arguing that the plaintiff has not shown that the defendants' actions were motivated or substantially caused by the plaintiff's exercise of his First Amendment rights and that the plaintiff has not adequately asserted that the defendants' actions chilled his speech or caused other concrete harm.

As to the second element, the defendants argue that the plaintiff has not pleaded sufficient facts to support the assertion that the plaintiff's speech activities were a

---

[3] It is well settled that the "rights to complain to public officials and to seek administrative and judicial relief are protected by the First Amendment." Gagliardi v. Village of Pawling, 18 F.3d 188, 194 (2d Cir. 1994).

substantial or motivating factor for the defendants' enforcement action. The Second Circuit Court of Appeals has recognized that the questions of a defendant's motive and intent, though critical to First Amendment retaliation claims, "are difficult to plead with specificity in a complaint." Gagliardi v. Village of Pawling, 18 F.3d 188, 195 (2d Cir. 1994). "While a bald and uncorroborated allegation of retaliation might prove inadequate to withstand a motion to dismiss, it is sufficient to allege facts from which a retaliatory intent on the part of the defendants reasonably may be inferred." Id.

The plaintiff alleges facts that plausibly support an inference of retaliatory intent. First, the temporal proximity between the plaintiff's testimony at the City Council hearing and the investigation of his home support such an inference. See Colon v. Coughlin, 58 F.3d 865, 872 (2d Cir. 1995) (noting that temporal proximity "may serve as circumstantial evidence of retaliation"). The plaintiff alleges that the defendants claim to have received an anonymous phone call only two days after the plaintiff testified at the City Council meeting. FAC ¶¶ 66, 94. Nothing was raised in the allegedly anonymous phone call to create a need for an urgent investigation, such as trash accumulation or loud parties, but despite the lack of urgency, the plaintiff's home was investigated within one week. Id. ¶¶ 67-68, 94. The plaintiff points out that the one-week

response time was significantly faster than OSE's response to
the previous complaint about the plaintiff in 2017, where it
took OSE two and a half months to respond. Id. ¶¶ 69-70, 95.

Moreover, in addition to the plaintiff's own suspicions
that OSE was likely to act in a retaliatory manner, the
plaintiff alleges that a City Council member raised concerns
about retaliatory phone complaints in the June 26, 2018 City
Council meeting. Id. ¶ 67.

The defendants argue that the plaintiff's allegations are
insufficient. Specifically, the defendants argue that the fact
that the 311 call was investigated does not show retaliatory
animus because the City is required to investigate all
complaints under New York City Administrative Code § 28-103.18.
Whether the defendants responded to the alleged 311 call because
they were required to or because they intended to retaliate
against the plaintiff is a question of fact that cannot be
resolved on a motion to dismiss. Further, the defendants'
argument does not respond to the plaintiff's assertion that the
temporal proximity between the call and the inspection of the
plaintiff's home supports an inference of retaliatory intent.

The defendants also argue that the plaintiff has not shown
that the inspection was retaliatory because, according to the
defendants, there would have been no way to identify the
plaintiff at the City Council hearing because at the hearing the

plaintiff identified himself as "Skip Karol" rather than "Stanley Karol." Whether the defendants were able to identify the plaintiff at the hearing based on the plaintiff's identification of himself as "Skip Karol" is a question of fact that cannot be resolved on a motion to dismiss.

As to the third element of a First Amendment retaliation claim -- whether the defendants' actions caused the plaintiff injury -- the plaintiff alleges that he has stopped distributing fliers, does not plan to inquire about future opportunities to express his views, does not intend to testify at any future public hearings, and is wary of advocating for the short-term rental market. FAC ¶¶ 87-88, 96. Additionally, because OSE issued four summonses to the plaintiff, the plaintiff was required to appear in front of an administrative law judge to litigate the citations against him, and he received a $4,375.00 fine.[4] Id. ¶ 81.

The defendants argue that these allegations are insufficient to show that the plaintiff's speech has been chilled. First, the defendants point out that there have not been any hearings regarding regulation of the short-term rental market and therefore the plaintiff could not have declined to

---

[4] The New York City Office of Administrative Trials and Hearings ("OATH") dismissed one of the summonses against the plaintiff but sustained the remaining three, imposing a total civil penalty of $4,375.00. See Dkt. No. 33. The plaintiff appealed that decision, and the OATH hearing officer's decision was affirmed. See Dkt. No. 39.

participate in any such hearings. However, the plaintiff's allegation is not simply that he has declined to participate in public hearings, it is also that he does not intend to participate in future hearings despite his desire to express his views. Id. ¶ 87. That there have been no public hearings does not rebut the plaintiff's allegation that he has been deterred from participating in any hearings that may arise in the future.

The defendants also present evidence that the plaintiff participated in press conferences to discuss Airbnb after the OSE inspection. The defendants attach newspaper articles to their moving papers purportedly documenting these press conferences. See Defs.' Exs. M & N. The defendants also attach printouts of the Airbnb website to show that the plaintiff has continued to advertise his home on Airbnb, despite the plaintiff's allegation that he is hesitant to do so. See Defs.' Exs. O-R. The defendants argue that this evidence shows that the plaintiff's allegation that he no longer wishes to participate in public discussions regarding the short-term rental market is false, and that the plaintiff has not stopped renting his home through Airbnb.

The evidence attached by the defendants is plainly hearsay and is not proper for consideration on a motion to dismiss. Federal Rule of Evidence 201(b) allows courts to take judicial notice of "a fact that is not subject to reasonable dispute

because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." The defendants' submissions do not rise to the level of proof needed for judicial notice. While the Court could take judicial notice that an article was published it could not take judicial notice of the truth of the facts in the article. See Staehr v. Hartford Fin. Servs. Group, Inc., 547 F.3d 406, 425 (2d Cir. 2008); Ayala v. Looks Great Servs., Inc., No. 14cv6035, 2016 WL 3541548, at *8 (E.D.N.Y. June 23, 2016).

Moreover, the plaintiff does not need to show that he ceased all advocacy to show that his speech has been chilled. See Jones v. Bay Shore Union Free Sch. Dist., 947 F. Supp. 2d 270, 275 (E.D.N.Y. 2013) ("[T]he fact that Plaintiff has continued to criticize the District does not preclude a finding of 'actual chill.'"). None of the exhibits attached by the defendants undermine the plaintiff's assertions that he has stopped handing out fliers near the City Council and that he does not intend to speak out at future City Council meetings. Those allegations are sufficient to plead that the plaintiff's speech has been chilled. See United States v. Vazquez, 145 F.3d 74, 81 (2d Cir. 1998) (holding that a litigant's assertion that her speech was chilled was not undermined by the fact that she continued to engage in speech activities, because she "may have

felt obliged to tone down her rhetoric or to refrain from handing out literature at times when she would have liked so to do").

Furthermore, the plaintiff need not allege actual chilling of his speech to plead a prima facie First Amendment retaliation claim. Dorsett, 732 F.3d at 160. It is sufficient for the plaintiff to allege some other concrete harm. In this case, the plaintiff alleges that the four summonses issued at the OSE inspection have resulted in concrete harm. As a result of these summonses, the plaintiff had to appear before an administrative tribunal, and the tribunal imposed a $4,375.00 fine on the plaintiff. These allegations are sufficient to plead the third element of a prima facie First Amendment retaliation claim. See Smith v. Campbell, 782 F.3d 93, 100 (2d Cir. 2015) (explaining that the third element was met because the defendants issued tickets to the plaintiff that required her to "appear in court, pay a fine, or both").[5]

---

[5] The defendants argue that Smith is inapposite because the tickets in Smith carried potential criminal penalties. However, the Court of Appeals did not rely on the fact that the tickets posed the possibility of criminal liability when it explained that the third element of a prima facie retaliation claim was met. Rather, the court explained that the plaintiff would have to either appear in court or pay a fine, or possibly both. Although the defendants argue that there "is a distinction between tickets with potential criminal ramifications and the civil administrative summonses at issue here," the defendants do not cite any authority to show that the distinction is material. See Reply at 6.

**B.**

The individual defendants also move to dismiss the plaintiff's First Amendment retaliation claim on grounds of qualified immunity, arguing that it was objectively reasonable to issue the four summonses because the plaintiff was renting his home through Airbnb.

"Qualified immunity shields government officials from liability for civil damages when they are sued in their personal capacity as a result of their performance of discretionary functions, and serves to protect government officials from the burdens of costly, insubstantial lawsuits." Lennon v. Miller, 66 F.3d 416, 420 (2d Cir. 1995). The doctrine protects officials not only from liability but also from the burdens of litigation, Johnson v. Fankell, 520 U.S. 911, 915 (1997), unless the plaintiff identifies facts showing "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct," Wood v. Moss, 572 U.S. 744, 745 (2014) (quoting Ashcroft v. al-Kidd, 563 U.S. 731, 735 (2011)). "Under prong two, a '[g]overnment official's conduct violates clearly established law when, at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" Abrams v. Dep't of Pub. Safety, 764 F.3d 244, 255

(2d Cir. 2014) (alteration in original) (quoting al-Kidd, 563 U.S. at 741). The Court may exercise its "sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." Pearson v. Callahan, 555 U.S. 223, 236 (2009).

For a right to be clearly established, the plaintiff must define the right with reasonable specificity, the Supreme Court or the Second Circuit Court of Appeals must have confirmed the existence of that right, and a reasonable official must have understood that the defendants' acts were unlawful. Doninger v. Niehoff, 642 F.3d 334, 345-46 (2d Cir. 2011). The plaintiff need not identify a decision finding the "very action in question" unconstitutional. Anderson v. Creighton, 483 U.S. 635, 640 (1987). Rather, the "contours" of the right identified must be "sufficiently clear," id., such that "officials can still be on notice that their conduct violates established law even in novel factual circumstances." Hope v. Pelzer, 536 U.S. 730, 741 (2002).

The defendants do not dispute that the plaintiff's right to speak about the proposed legislation and the City's policies was clearly established, and indeed, the right to petition the government, speak against pending legislation, and speak against the City's enforcement policies is sufficiently clear that the

defendants were on notice that they could not retaliate against the plaintiff for those activities. See Richardson v. Pratcher, 48 F. Supp. 3d 651, 662 (S.D.N.Y. 2014); see also Lozman v. City of Riviera Beach, Fla., 138 S. Ct. 1945, 1954 (2018) ("[T]his Court has recognized 'the right to petition as one of the most precious of the liberties safeguarded by the Bill of Rights.'" (quoting BE & K Constr. Co. v. NLRB, 536 U.S. 516, 524 (2002))).

The defendants argue that they are entitled to qualified immunity because it was objectively reasonable to issue the four summonses to the plaintiff in light of the plaintiff's short-term renting of his home. The plaintiff alleges that these tickets were issued not simply to remedy violations of the building code, but in retaliation for the plaintiff's constitutionally protected speech, and that the summonses lacked a basis in the law.

The question whether it was objectively reasonable for the defendants to inspect the plaintiff's home and issue the four summonses cannot be resolved on this motion. The plaintiff alleges, and the defendants dispute, that the defendants targeted the plaintiff's home for inspection because of the plaintiff's speech activities, and that the summonses lack a basis in the law.[6] It cannot be determined as a matter of law

---

[6] Indeed, one of the summonses was dismissed at the plaintiff's OATH hearing. See Dkt. No. 33.

whether the defendants' actions were "motivated or substantially caused" by the plaintiff's exercise of his First Amendment rights. See Dorsett, 732 F.3d at 160. These questions are factual in nature and cannot be resolved without the benefit of discovery. Accordingly, the defendants' motion for qualified immunity is **denied without prejudice**.

C.

The defendants argue that even if the plaintiff's First Amendment retaliation claim survives the motion to dismiss, the claim should be dismissed as against individual defendants Wong, Canonica, and Gillen because the plaintiff has failed to set forth sufficient personal involvement by these defendants in the alleged violation.

"It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." Colon, 58 F.3d at 873 (quotation marks omitted). The plaintiff alleges that all four individual defendants inspected the plaintiff's home and were involved in issuing the summonses but agrees with the defendants that only individual defendant Cautela signed the summonses.

As pleaded, the plaintiff alleges that the harm he suffered flowed from the issuance of the summonses, the need to litigate the summonses, and potential fines posed by the summonses, which

would cause a significant financial burden to the plaintiff. See, e.g., FAC ¶ 85 ("The stress of having to defend himself at the September 10, 2018 hearing, coupled with anxiety over potentially being forced to sell the only home he has ever known, has taken a severe toll on Mr. Karol."). The parties agree that only one of the individual defendants -- namely, Inspector Cautela from the Department of Buildings -- signed the summonses. Indeed, Inspector Cautela was the only person present at the inspection with authority to sign the summonses because the other three individual defendants were not employees of the Department of Buildings. See N.Y.C. Admin. Code § 28-201.3.1 (providing authority to Department of Buildings officers to issue summonses for violations of the building code).

The plaintiff does not allege that the inspection itself chilled his speech or caused other concrete harm, or that the inspection "would deter a similarly situated individual or ordinary firmness from exercising his or her constitutional rights." See Dawes v. Walker, 239 F.3d 489, 493 (2d Cir. 2001), overruled on other grounds by Swierkiewicz v. Sorema N.A., 534 U.S. 506 (2002). Accordingly, the plaintiff has not sufficiently pleaded that defendants Wong, Canonica, or Gillen were personally involved in the act that was alleged to have caused injury cognizable under the First Amendment -- the issuance of

the summonses. Therefore, the plaintiff's claims against defendants Wong, Canonica, and Gillen are **dismissed**.[7]

D.

In addition to a First Amendment retaliation claim, the plaintiff brings a substantive due process claim under the Due Process Clause of the Fourteenth Amendment.[8] The exact nature of the plaintiff's due process claim is difficult to discern from the face of the FAC. It is unclear from the FAC whether the plaintiff intends to challenge what he calls a "newly stated City policy of treating virtually any home-sharing as illegal," FAC ¶ 102, as facially invalid, or whether the plaintiff intends to challenge the defendants' application of that policy to the plaintiff. At one point, the plaintiff alleges that this policy lacks a rational basis and is motivated by animus against Airbnb; however, the plaintiff does not point to a specific statute or regulation to which this claim would apply. Id. ¶ 103. Later in the FAC, the plaintiff states that the defendants violated the plaintiff's substantive due process rights because they "acted arbitrarily and capriciously in

---

[7] At the argument on the motion, and in a post-motion letter (Dkt. No. 41), the plaintiff suggested that defendants Wong, Canonica, and Gillen could be held liable under a failure to intervene theory. However, because the plaintiff did not bring a failure to intervene claim in the FAC, the Court does not reach that issue.

[8] Although FAC states that the plaintiff's substantive due process claim is brought "against all defendants," see FAC p. 18 (capitalization omitted), the plaintiff clarified in his motion papers and at oral argument that his substantive due process claim is brought only against the City of New York.

targeting enforcement against Mr. Karol and treating home-sharing in Mr. Karol's two-family home as transient occupancy." Id. ¶ 106.

Whether the plaintiff intends to challenge the City's alleged policy on its face or the application of that policy to the plaintiff (or both) is an important distinction because different standards would apply to those claims. Courts apply rational basis review to "analyze facial challenges regarding whether a governmental entity has a proper justification for a statute or regulation." See Winston v. City of Syracuse, 887 F.3d 553, 556 n.11 (2d Cir. 2018). When plaintiffs bring as-applied challenges, courts evaluate whether the defendants' conduct "is so outrageously arbitrary as to constitute a gross abuse of governmental authority" -- that is, whether the defendants' conduct shocks the conscience. Harlen Assocs. v. Inc. Village of Mineola, 273 F.3d 494, 505 (2d Cir. 2001) (quoting Natale v. Town of Ridgefield, 170 F.3d 258, 263 (2d Cir. 1999)).

In his motion papers, the plaintiff focuses mainly on the defendants' enforcement action against the plaintiff. Although the plaintiff speaks of the City's enforcement policy and argues that it lacks a rational basis, the plaintiff argues that the policy lacks a rational basis as applied to him. See Opp'n at 20 ("The City's enforcement actions against him [the plaintiff]

bear no relation to the stated goal of preserving affordable units for long-term tenancies . . . ." (emphasis omitted)). And at argument the plaintiff's counsel argued that the alleged application of the City's policy to the plaintiff was so arbitrary as to shock the conscience. Accordingly, it appears that the plaintiff challenges the City's enforcement policy as it was applied to him.

To allege adequately that the defendants' enforcement action against the plaintiff violated his right to substantive due process, the plaintiff would need to claim plausibly: "(1) a valid property interest or fundamental right; and (2) that the defendant infringed on that right by conduct that shocks the conscience or suggests a gross abuse of governmental authority." King v. N.Y.C. Emps. Ret. Sys., 212 F. Supp. 3d 371, 401 (E.D.N.Y. 2016) (quotation marks omitted). Substantive due process does not protect "against government action that is 'incorrect or ill-advised.'" Lowrance v. Achtyl, 20 F.3d 529, 537 (2d Cir. 1994) (quoting Bishop v. Wood, 426 U.S. 341, 350, (1976)). Indeed, "[s]ubstantive due process is an outer limit on the legitimacy of governmental action. It does not forbid governmental actions that might fairly be deemed arbitrary or capricious and for that reason correctable in a state court lawsuit seeking review of administrative action. Substantive due process standards are violated only by conduct that is so

outrageously arbitrary as to constitute a gross abuse of governmental authority." Natale, 170 F.3d at 263; see also Dukes v. N.Y.C. Emps. Ret. Sys., 361 F. Supp. 3d 358, 375 (S.D.N.Y. 2019).

The plaintiff argues that his ability to obtain rental income through Airbnb is a fundamental property right. The plaintiff does not cite any authority to support this proposition and, at most, "it is unclear if rental income is a constitutionally protected property right." Andrews v. City of New York, 2004 U.S. Dist. LEXIS 30290, at *38-39 (E.D.N.Y. Nov. 22, 2004). In any event, the plaintiff has failed to allege that the defendants' inspection and issuance of the summonses was "so outrageous and arbitrary that it shocks the conscience." See Rackley v. City of New York, 186 F. Supp. 2d 466, 479 (S.D.N.Y. 2002) (quotation marks omitted). To the extent that the plaintiff argues that the defendants' actions were egregious or conscience shocking because they were taken in retaliation for the plaintiff's speech, that argument falls under the plaintiff's First Amendment retaliation claim. The Due Process Clause of the Fourteenth Amendment is not a vehicle for the plaintiff to assert his First Amendment retaliation claim a second time. See Albright v. Oliver, 510 U.S. 266, 273 (1994) ("Where a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort

of government behavior, "that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims." (quoting Graham v. Connor, 490 U.S. 386, 395 (1989))); Hickey v. City of New York, No. 01cv6506, 2004 WL 2724079, at *18 (S.D.N.Y. Nov. 29, 2004) ("[S]ubstantive due process analysis is not available where a more specific constitutional standard is directly applicable.").

To the extent that the plaintiff intends to challenge the alleged policy on its face,[9] the claim also fails. The plaintiff asserts that the City's policy of targeting short-term rentals in one- and two-family homes lacks a rational basis. See FAC ¶¶ 105, 107. The City asserts that the policy helps ensure the City's permanent housing stock and maintain the residential character of neighborhoods. Although the plaintiff states, in a conclusory fashion, that bringing enforcement actions against owners of one- and two-family homes bears no rational relationship to those goals, see, e.g., FAC ¶ 107, such conclusory statements are not sufficient to survive a motion to dismiss. See TZ Manor, LLC v. Daines, 815 F. Supp. 2d 726, 744 (S.D.N.Y. 2011) ("[A] court may resolve at the motion to dismiss stage whether the allegations in a complaint, accepted as true, rise to the level sufficient to support a substantive due

---

[9] The plaintiff has not pointed to a specific piece of legislation under which this alleged policy falls or a specific written policy.

process claim."). Accordingly, the plaintiff's substantive due process claim is **dismissed.**

**CONCLUSION**

The Court has considered all of the arguments raised by the parties. To the extent they are not specifically addressed, they are either moot or without merit. For the reasons explained above, the defendants' motion to dismiss the FAC is **granted in part and denied in part.** The defendants' motion to dismiss the plaintiff's retaliation claim under the First and Fourteenth Amendments is **granted as to defendants Wong, Canonica, and Gillen, and denied as to the remaining defendants.** The defendants' motion to dismiss the plaintiff's substantive due process claim under the Fourteenth Amendment is **granted.** The Clerk is directed to close the pending motion at Docket Number 23.

**SO ORDERED.**

Dated:    **New York, New York**
           **July 3, 2019**

                                              **John G. Koeltl**
                               **United States District Judge**